## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

SOLLIE BOONE JR.,

Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION
LLC,

Defendants.

Civil Action No. 2:25-cv-13165

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

## INTRODUCTION

1.     Plaintiff, an identity theft victim, brings this action against Defendants to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3.     Venue is proper in this District under to 28 U.S.C. §1391(b).

## PARTIES

4.     Plaintiff Sollie Boonie Jr. ("Plaintiff") resides in Detroit, Michigan, and qualifies as a "consumer" as defined and protected by the FCRA.

5.     Defendant Experian Information Solutions, Inc. ("Experian") is a

consumer reporting agency with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626 and is authorized to do business in the State of Michigan, including within this District.

6.     Defendant Trans Union LLC ("Trans Union") is a corporation with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661 and is authorized to do business in the State of Michigan, including within this District.

## FACTUAL ALLEGATIONS
### Plaintiff's Discovery of Identity Theft

7.     In or around March 2023, in an effort to protect Plaintiff's personal information, and after consistently receiving notifications that his data had been compromised in multiple breaches, Plaintiff subscribed to Defendant Experian's paid fraud monitoring services as a proactive measure to safeguard his identity and credit profile.

8.     As part of Defendant Experian's subscription, Plaintiff received a copy of his credit reports.

9.     During the review of his credit reports from Defendants, Plaintiff noticed an unfamiliar and unknown account, particularly, the existence of a "Upgrade Inc. account" with the following details:

      a. Upgrade Inc.
         Account No.: 14606XXXX
         Date Opened: February 2, 2022

Status: Sold; previously charged off

10.     Afraid that the continued reporting of the fraudulent Upgrade account would further damage his credit standing, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (CFPB) on November 11, 2024, disputing an Upgrade, Inc. account.

11.     On or about November 14, 2024, the CFPB forwarded Plaintiff's complaint to Velocity Investments, LLC, the purchaser of the fraudulent Upgrade account, for response.

12.     On or about November 25, 2024, Velocity submitted a response, asserting that it had purchased the account in good faith and further claimed that an "initial demand letter" had been sent to Plaintiff on August 30, 2024, and that "verification documents" had been provided.

13.     Plaintiff, however, never received any such demand letter or verification materials.

### Plaintiff Obtains His Credit Reports and Reconfirms the Reporting of the Upgrade Inc. accounts in Plaintiff's Consumer Files

14.     Having already filed a complaint with the CFPB, Plaintiff reasonably believed that the fraudulent information in his credit files would be corrected.

15.     On or about May 13, 2025, Plaintiff obtained updated copies of his consumer credit reports to confirm whether his disputes had been resolved. To his shock and dismay, not only had the inaccurate reporting continued, but the problem

3

had worsened, Plaintiff's Experian credit file now reflected *two* separate fraudulent

Upgrade accounts instead of being corrected or deleted.

16.     Specifically, the Defendants are reporting the following:

a.  Creditor: UPGRADE INC
    Account Number: 14606****
    Reported Balance: $0
    Date Opened: 02/02/2022
    Status: Sold; previously charged off

b.  Creditor: UPGRADE INC
    Account Number: 154133XXX
    Reported Balance: $0
    Date Opened: 03/25/2022
    Status: Closed; $1,434 written off
    Sold To: Velocity Debt Buyer

("Fraudulent Accounts")

17.     In addition to the Fraudulent Accounts, Plaintiff's credit reports

revealed multiple hard inquiries that he never applied for, consented to, or

authorized, including:

a.  Ford Credit – April 14, 2025
b.  GM Financial – April 6, 2025
c.  OneMain Financial – February 24, 2025
d.  Credit Acceptance Corp (CAC) – January 17, 2025
e.  Capital One – May 3, 2024
f.  Republic Bank / NetCredit – January 24, 2025

18.     Plaintiff's Experian credit report further displayed an unrecognized

address "PO Box 03111, Highland Park, MI 48203-0111" with which Plaintiff has

never lived, used, or been associated.

19.     Determined to protect his creditworthiness and reputation and seeing

that his disputes remained unresolved and had in fact worsened, Plaintiff filed a

sworn FTC Identity Theft Report on or about June 13, 2025.

### Plaintiff's Dispute with the CRA Defendants

20.    Concerned that the fraudulent Upgrade, Inc. accounts would continue

to appear in his consumer credit files and cause further damage to his credit

reputation, Plaintiff determined that he needed to escalate the issue by filing direct

disputes with the CRA Defendants.

21.    On or about June 21, 2025, Plaintiff disputed the Fraudulent Accounts

with the CRA Defendants. Specifically, Plaintiff advised that the Upgrade accounts

appearing in his consumer files were not his, but rather the product of fraud and

identity theft.

22.    Plaintiff provided sufficient information to identify his credit file and

sufficient information to support his dispute.

23.    Plaintiff requested that the identity theft information be blocked from

his credit file.

### Defendant Experian's Unreasonable Dispute Reinvestigation

24.    Upon information and belief, Defendant Experian received Plaintiff's

dispute and request that identity theft information be blocked from his credit file.

25.    On or about July 2, 2025, Defendant Experian sent Plaintiff an email

stating that it had received a dispute regarding his credit file but refused to process

it, claiming that the submission did not appear to have been made by the consumer.

26. On or about August 18, 2025, Plaintiff obtained and reviewed his updated Experian credit report. To his frustration and detriment, the same two fraudulent Upgrade, Inc. accounts, which he had disputed and identified as the product of identity theft, were still being reported in his Experian file.

27. Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

28. Defendant Experian failed to reinvestigate Plaintiff's June 2025 dispute and failed to block the identity theft information.

29. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

30. Upon information and belief, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

31. On or about July 3, 2025, Trans Union acknowledged receipt of Plaintiff's dispute by sending him a letter outlining general identity theft remedies and consumer rights.

6

32.     On or about July 25, 2025, Trans Union issued a dispute response to Plaintiff, "verifying" the fraudulent Upgrade account as accurate rather than blocking or deleting it.

33.     On or about August 18, 2025, Plaintiff obtained and reviewed his updated Trans Union credit report. To his dismay, the same fraudulent Upgrade accounts that he had repeatedly disputed were still being reported.

34.     Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

35.     Defendant Trans Union failed to reinvestigate Plaintiff's June 2025 dispute and failed to block the identity theft information.

36.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**The Credit Bureau Defendant' Method for Considering Consumer Credit Report Disputes**

37.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

38.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows the

credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

39.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

40.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

41.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

42.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

43.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

44.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## PLAINTIFF'S DAMAGES

45.     Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

46.     Plaintiff filed a complaint with the CFPB regarding the fraudulent Upgrade, Inc. accounts.

47.     Plaintiff filed a sworn FTC Identity Theft Report, identifying the Upgrade accounts, unauthorized inquiries, and an unrecognized address as fraudulent and unauthorized.

48.     Moreover, Plaintiff disputed with the Credit Bureau Defendants in June 2025.

49.     Plaintiff immediately identified himself as an identity theft victim and requested that the Credit Bureau Defendants block the account information that was the product of identity theft.

50.     Despite Plaintiff's diligence, the Credit Bureau Defendants failed to delete or block the fraudulent Upgrade accounts, and instead continued to publish them in his credit files.

51.     Instead, the Credit Bureau Defendants repeatedly disregarded Plaintiff's credible disputes. Often responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

52.     The Credit Bureau Defendants understand it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

53.     Despite Plaintiff's disputes to the Credit Bureau Defendants that the Upgrade Accounts were the product of fraud and he was a victim of identity theft, Defendants Experian and Trans Union hardly wavered in their refusals to remove the same.

54.     As a direct result of Defendant Experian's ardent refusal to remove the Upgrade Inc. accounts which were the product of identity theft, Defendant Experian has continued to saddle Plaintiff with a derogatory and Fraudulent Account that was the product of identity theft.

55.     As a direct result of Defendant Trans Union's ardent refusal to remove the Oriental Bank account, which was a product of identity theft, Defendant Trans Union has continued to saddle Plaintiff with a derogatory and Fraudulent Account that was the product of identity theft.

56.     Due to Defendants' ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff's own credit applications were frustrated. In August 2025, Plaintiff was denied auto financing by Westlake Financial Services, Western Funding Incorporated, and Capital One during his

attempts to purchase a vehicle through Drive Nation Auto Sales.

57.    Furthermore, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

58.    Further, and due to Defendants' inexplicable refusal to remove the fraudulent Upgrade credit accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Experian, and Trans Union, to no avail.

59.    Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes. Further, Plaintiff reasonably believes that the fraudulent Upgrade Credit Accounts negatively impacted and depressed his credit score and debt to income ratio, making Plaintiff appear riskier to creditors.

60.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

61.    At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of

Plaintiff herein.

62. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time he receives another communication from Defendants. His ongoing stress and anxiety regarding the situation has affected him and his relationships negatively.

63. CRA Defendants Experian and Trans Union have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of *April Hendrix vs. Equifax, et. al.*, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including CRA Defendants Equifax and Trans Union, over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

64. The *Hendrix* suit put the Credit Bureau Defendants on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

65. The Credit Bureau Defendants have had years of notice in the form of federal lawsuits, despite it all, the Credit Bureau Defendants did not take any better steps to protect the Plaintiff here.

66.     The respective internal policies and procedures of the Credit Bureau Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the Credit Bureau Defendants' respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

67.     As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the data furnishers despite numerous court decisions admonishing this practice. See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

13

68.     The Credit Bureau Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

69.     The Credit Bureau Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

70.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory mortgage account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory Upgrade credit accounts that were the product of identity theft.

71.     As a direct result of Defendants' conduct, action, and inaction, Plaintiff experienced multiple credit denials in August 2025. In particular, Plaintiff was denied auto financing by Westlake Financial Services, Western Funding Incorporated, and Capital One Auto Finance during his attempts to purchase a vehicle through Drive Nation Auto Sales, Inc.

72.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**Violation of 15 U.S.C. § 1681e(b)**
**(Defendants Experian and Trans Union)**

73.     Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

74.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

75.     On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

76.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a credit account with

15

Upgrade and that he was delinquent on at least one occasion.

77.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

78.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

79.     As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory Upgrade credit accounts that were the product of identity theft.

80.     As a direct result of Defendants' conduct, action, and inaction, Plaintiff experienced multiple credit denials in August 2025. In particular, Plaintiff was denied auto financing by Westlake Financial Services, Western Funding Incorporated, and Capital One Auto Finance during his attempts to purchase a

vehicle through Drive Nation Auto Sales, Inc.

81.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

82.     The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Defendants Experian and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83.     Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court under 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Violations of 15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendants Experian and Trans Union)**

84.     Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

85.     The FCRA mandates that a CRA conduct an investigation of the

accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. *Id*.

86. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

87. In June 2025, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the fraudulent Upgrade Credit Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

88. Plaintiff disputed the identity theft information to the Credit Bureau Defendants in June 2025 to no avail.

89. On at least one occasion, Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

90. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so

shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

91.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

92.    Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

93.    The Credit Bureau Defendants' "reinvestigations," were rendered that much more deficient considering their contemporary, Innovis deleted the same disputed information upon Plaintiff's first dispute and certainly in a far more reduced timeline.

94.    The Credit Bureau Defendants' repeated refusals to delete the disputed Upgrade credit accounts provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

95.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on

which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

96.     Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

97.     As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory mortgage account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory Upgrade credit accounts that were the product of identity theft.

98.     As a direct result of Defendants' conduct, action, and inaction, Plaintiff experienced multiple credit denials in August 2025. In particular, Plaintiff was denied auto financing by Westlake Financial Services, Western Funding

Incorporated, and Capital One Auto Finance during his attempts to purchase a vehicle through Drive Nation Auto Sales, Inc.

99. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

100. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### Violations of 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Against Defendants Equifax and Trans Union)

102. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

21

103.   Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

104.   Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

105.   Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.  Plaintiff further supported the fact that he was an identity theft victim by providing to the Credit Bureau Defendants copies of the Police Report and FTC IDT Report.

106.   The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

107.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open mortgage account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open mortgage account that was the product of identity theft.

108.   As a direct result of Defendants' conduct, action, and inaction, Plaintiff

22

experienced multiple credit denials in August 2025. In particular, Plaintiff was denied auto financing by Westlake Financial Services, Western Funding Incorporated, and Capital One Auto Finance during his attempts to purchase a vehicle through Drive Nation Auto Sales, Inc.

109.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

110.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **JURY DEMAND**

112.   Plaintiff hereby demands a trial by jury.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a)     Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)     An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c)     An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

Dated: October 7, 2025

By: */s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Sollie Boone Jr.*

24